STATE OF IOWA v. JAMES HAYES, Appellant.

**Larceny by Finding:** CORPUS DELICTI: *Evidence.* Code, section 3907, provides that if any person come, by finding, into the possession of personal property of which he knows the owner, and unlawfully appropriates the same, he is guilty of larceny. *Held,* that where the property is so marked as to be capable of identification, proof of the possession and of the immediate subsequent conversion of it is admissible to establish the *corpus delicti.*

EVIDENCE: *Knowing owner.* To convict for the larceny of the contents of a pocketbook under Code, 3907, it was not error to charge that defendant was guilty, if at the time he came into the possession of the pocketbook and its contents, he knew, or by an examination of the papers in said pocketbook might reasonably have known, that it belonged to a certain person.

GRANGER and ROBINSON, JJ., dissenting.

*Intent.* Though the intent to steal must exist at the time of the finding, and not be formed subsequently to the taking, it was not error to charge that the jury were to arrive at the intent of defendant in taking the property, from his conduct with reference thereto at, or closely following, the taking of the same, where defendant did not find the money until he opened the pocketbook.

CONSTRUCTION OF STATUTES. In a prosecution under Code, section 3907, punishing and defining larceny by finding, it is not error to give the definition of larceny, generally, as contained in section 3902, as the legislature did not intend by the enactment of section 3907 to create a distinct crime, but to declare a rule of evidence, which, being fulfilled, constitutes the crime as defined in the latter section; and particularly as there was evidence from which the jury might have found defendant guilty of larceny, independent of said section 3907.

*Appeal from Jackson District Court.—* HON. W. F. BRANNAN, Judge.

WEDNESDAY, MAY 27, 1896.

DEFENDANT was convicted of the crime of larceny, and sentenced to imprisonment in the penitentiary for the term of ten months. To reverse the judgment

of the district court, he prosecutes this appeal.—
*Affirmed.*

*D. T. Bauman* for appellant.

*Milton Remley,* attorney general, for the state.

DEEMER, J.—The indictment charges the defendant
with having stolen a certain purse or pocketbook and
the contents thereof, consisting of sixty-eight dollars
in money. The evidence shows that one Henry Weis
lost a pocketbook containing some sixty-eight dollars
in money, three receipts which were executed in his
name, and a trunk key, upon the street in front of a
saloon in the town of Bellevue, in Jackson county,
Iowa, on the afternoon of the third day of July, 1895;
that defendant found the pocketbook soon after it
had been lost, took it to a barn near the saloon, and
after having extracted the money therefrom, threw
the pocketbook into a manger, where it was found the
next morning. Defendant concealed a part of the
money in his boot, expended some of it for liquor,
loaned some of it to his friends, and paid out a part of
it for rent. In the evening of the day on which the
pocketbook was lost, defendant admitted that he found
it, and told where it would be found. It was discov-
ered by a brother of the prosecuting witness at the
place where the defendant said he put it, but when
found, it contained nothing but the receipts and the
trunk key. The pocketbook contained three compart-
ments, in one of which Weis had placed the receipts,
the trunk key and a ten dollar bill, in another some
paper money, and in the third some silver. The
defendant was, no doubt, convicted under section
3907 of the Code, which is as follows: "If any person
come, by finding, to the possession of any personal
property of which he knows the owner, and unlawfully

appropriate the same or any part thereof to his own use, he is guilty of larceny, and shall be punished accordingly."

I.   His first contention on this appeal is that the court erred in admitting evidence showing the defendant's possession of the lost property, and his subsequent conversion thereof, for the reason that the *corpus delicti* was not shown.   As we understand the claim, it is based upon the thought that there was no evidence showing, or tending to show, that the defendant, at the time he found the property, knew who the owner of it was.   It is no doubt true that the finder of lost goods, which have no marks by which the owner could be identified, and who does not know to whom they belong, is not guilty of larceny, even if he does not exercise diligence to discover who the owner of the goods may be. And it is likewise true that the crime must consist in the original taking, and not in a subsequent conversion. But where the property is so marked as to be capable of identification, proofs of the possession and of the immediate subsequent conversion is admissible, and such proof in itself tends to establish the *corpus delicti. Allen v. State*, 91 Ala. 19, 8 South. 665; *State v. Weston*, 9 Conn. 527; *Com. v. Titus*, 116 Mass. 42; *Ransom v. State*, 22 Conn. 153–160; *State v. Reed*, 8 Tex. App. 40. The only distinction made between theft of lost goods and theft of other property seems to be, that at the time of finding, not only must the intent to steal exist, but the finder must know, or have the reasonable means of knowing or ascertaining, the owner.  *People v. McGowan*, 17 Wend. 460; *Griggs v. State*, 58 Ala. 425; *State v. Clifford*, 14 Nev. 72; 3 Greenl. Ev., section 159; *Com. v. Titus, supra*.  The evidence, with reference to the felonious intent of the defendant in taking the property, was ample.  On the question as to his knowledge of the ownership, there was testimony

tending to show, that defendant had seen the pocket-book in the possession of Weis, just prior to the time it was lost. And it further appears, that the receipts which were in the purse at the time it was found by defendant, clearly and unmistakably identified it as the property of Weis. Defendant had "the reasonable means of knowing or ascertaining, by these receipts, who the owner was," and, according to the instructions of the court, this was equivalent to actual knowledge.

II. The instructions of the court are complained of. The sixth defines the crime of larceny independent of the statute before quoted. It is insisted that this was error, because not applicable to the case made by the evidence. There is no force in this objection. It is apparent that the legislature did not intend by the enactment of section 3907 to create a distinct crime. Section 3902 defines larceny generally, and section 3907 declares a rule of evidence, which, being fulfilled, constitutes the crime as defined in the first section. The indictment charges the crime of larceny under section 3902, and it was proper, if not necessary, to define the offense charged. Moreover, there was evidence from which the jury may have found the defendant guilty of larceny, independent of section 3907. *State v. Pratt*, 20 Iowa, 267; *People v. Buelna*, 81 Cal. 135 (22 Pac. Rep 396). In the ninth instruction the court told the jury that the state must show, among other things, that the defendant, at the time he came into the possession of the pocketbook or purse, and its contents, knew that it belonged to the said Weis, or, by an examination of the papers in said pocketbook, might reasonably have known that the said pocketbook, with its contents, belonged to, or was the property of, the said Henry Weis. This same thought is repeated in other instructions.

It is insisted that these instructions are erroneous for the reason that defendant cannot be convicted

unless it be shown that he actually knew who the owner of the property was, at the time that he found it. That there are a few cases holding to the doctrine contended for will be conceded, but we think the great weight of authority supports the instructions given. See the cases heretofore cited in the first division of this opinion; also *State v. Levy*, 23 Minn. 104; *Allen v. State*, 91 Ala. 19 (8 South. Rep. 665). The thirteenth instruction told the jury that they were to arrive at the intent of the defendant, in taking the property, from his conduct with reference thereto, at, or closely following, the taking of the property, and concluded: "You are therefore to say, from the acts and conduct of the defendant at the time he discovered and took the money from the said pocketbook or purse, whether he did so with the unlawful intent to convert the same to his own use." The part of the instruction quoted is said to be erroneous, because, it is said, the intent to steal must exist at the time of the finding, and not be formed subsequently to the taking. We think the instruction, as applied to the facts in this case was not erroneous. He did not find the money until he opened the purse and discovered it therein. As soon as he discovered it he immediately took it, and proceeded to convert or conceal the same. *Robinson v. State*, 11 Tex. App. 403. Moreover, the court explicitly told the jury, in more than one instruction, that they must find that the defendant, when he found the pocketbook, and discovered and took from it the money therein contained, did so with intent to convert the same to his own use, and deprive the owner thereof. We see no error in the instructions given.

III. The defendant asked four instructions; and they were each refused by the court. These instructions, in so far as they embodied correct rules of law, were, in substance, given by the court on its own

motion. We have examined the whole record, as is our duty, and discover no prejudicial error.— Affirmed.

Granger, J.—(Dissenting). My preference for the rule of the majority opinion, as a law of the state, would lead me to refrain from dissenting, did I not believe the result would justify the oft-repeated charge against courts, of "judicial legislation." My objection to the opinion is wherein it holds that, under a statute which makes guilt of larceny by finding, dependant upon the finder's unlawfully appropriating the same to his own use, *knowing the owner*, he may be convicted if he has the reasonable means of knowing or ascertaining the owner. It needs no reasoning to show that under the rule of the opinion a person may be convicted of the larceny of such goods, who does not know the owner. If we accept it as the rule of the opinion that such a conviction can only be had when the property found has on or about it the evidence that would lead to knowledge of the ownership, we have only a modification of what would otherwise be confessedly an erroneous holding; for without the modification the conviction could be had if the finder apppropriated the same without knowing the owner, if he had the reasonable means of knowing him, without regard to the kind or character of the means of knowledge. The modification is simply a limitation upon the evidence upon which it can legally be made to appear, that he had the reasonable means of knowledge. It still remains, that he may be convicted without such knowledge. It is a proposition which is, because of its apparent conclusiveness, difficult of reasoning. The statute says, the offense shall consist of an unlawful appropriation, by one who knows the owner. The court is saying, that it may consist of such an appropriation, by one who

has certain *means* of knowing the owner. It is not pretended that such means of knowledge is the legal equivalent of knowledge, and hence the effect is an unmistakable and material change in the law. The difficulty is, because some authorities hold to a common law rule, as announced in some of the states, making the offense within the rule of the majority opinion. But the common law rule in those states furnishes the added provision, and not the courts. Our statute defines the crime, in terms, and does not attempt a re-enactment of the common law. In some cases it re-enacts the common law offenses, as an assault, and an assault and battery, and when it does that, we look to the common law definition for the particular facts constituting the crime. But not so when the statute specifies the facts. In *Estes v. Carter*, 10 Iowa, 400, it is said that, while the common law principles enter into our criminal adjudications, when the jurisdiction of our courts has been established over criminal offenses, "still they do not confer upon the courts in this state the power to try and punish an offense that is such at common law, but which has not been ordained as such by the supreme law-making power of the state." For a rule where our statute does not define the crime, but makes a common-law offense punishable, see *State v. Twogood*, 7 Iowa, 252. It is a general rule of construction, as well as the rule of this state, that criminal statutes are inelastic, and cannot be made to embrace cases plainly without the letter, though within the reason and policy of the law. *State v. Lovell*, 23 Iowa, 304. The case of *State v. Dean*, 49 Iowa, 73, is one for the larceny of lost property, but not having about it evidence of who the owner was; and the case holds against any rule of diligence to know the owner, and quotes approvingly the rule from 2 Bish. Cr. Law (5th Ed.), section 882, as follows: "The doctrine, therefore, is

that if, when one takes goods into his hands, he sees about them any marks, or otherwise learns any facts by which he knows who the owner is, yet with felonious intent appropriates them to his own use, he is guilty of larceny; otherwise, not." It will be seen from that rule that, to show guilt, the finder must see the marks or learn the fact "by which he knows who the owner is." I think the rule of the opinion is without support in any known authority.

ROBINSON, J., concurs in this dissent.